IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VELETTA C. COLEMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:19-CV-2198-K-BT |
| | § | |
| ANDREW SAUL, Commissioner of | § | |
| the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Commissioner of the Social Security Administration's Motion to Dismiss. (Doc. No. 37). After careful consideration of the motion, the responsive briefing, the relevant portions of the record, and the applicable law, the Court **GRANTS** Defendant's motion and **dismisses** Coleman's claims against him without prejudice.

## I. Factual Background

*Pro se* Plaintiff Veletta Coleman worked for the Social Security Administration (SSA) as a one-year, temporary Contact Representative from May 17, 2015, to May 16, 2016. Mot. at 7.; Am. Compl. at 46 (Doc. No. 23). Coleman's term of employment expired on May 16, 2016—her last day at the SSA. Mot. at 7; Am. Compl. at 46. Coleman alleges that the SSA intentionally treated her differently "than others similarly situated because of her color, race and national origin (systemic racism)," disability, age, and sex. Am. Compl. at 41. She contends that she "was intentionally

1

subjected to explicit and implicit sexual harassment," and that her rejection of "the unwelcome conduct was used as a basis for employment decisions." *Id*.

Specifically, she asserts the SSA denied her "reasonable accommodations"; terminated her "re-employment," social security benefits, and "Medicare Part B health insurance"; spread false rumors; treated a family member negatively, by terminating her husband's social security disability benefits; and made her work more difficult "by purposefully changing her mailbox size and responsibilities during her medical absence"—all as punishment because she filed a complaint with the EEOC. *Id*. at 42. Coleman further explains the SSA refused to adjust her pay "due to medical and leave absences"; terminated her private health insurance; discriminated against her when scheduling daily breaks and lunches; paid her less than "similarly situated employees with and without disabilities"; ignored her attempts to exhaust her administrative remedies; set compensation for her job "below that suggested by the employer's job evaluation study"; "maintained a neutral compensation policy or practice that had an adverse impact on [her]"; and "prevented Dallas Police Department from filing a vandalism report after [she] reported to authorities . . . the ongoing and repeated vandalism to her vehicle (during her work day)." *Id*. at 42-43. She also alleges that her supervisor Daryl Whitten made "unauthorized adjustments to [her] time card," "invited consumers to fraudulently write a negative review about [her] work," and filed a false police report with the DeSoto Police Department "that he reprimanded [her] by giving a performance evaluation that is lower than it should be." *Id*. at 43. She

contends Whitten and her coworker, Derek Shamberger, harassed her "sexually and non-sexual [sic]" and that Whitten and another supervisor, Thelma Benavidez, increased their scrutiny of her "window work (in front of consumers)." *Id*. at 43-44.

The only specific incident Coleman describes in her amended complaint takes place on her first day at the SSA, when she "legally parked her vehicle in a handicap parking space (using her State issued handicap placard)." *Id*. at 40. At that moment, Benavidez ran "out of the rear break room door loudly screaming, hollering and verbally attacking [her] with brash questions and repeatedly screaming 'MOVE YOUR CAR!'" *Id*. at 40-41. Coleman contends Benavidez's "brash behavior(s) continued throughout [her] employment (on or about May 16, 2016)." *Id*. at 41.

In response to Defendant's allegedly discriminatory and retaliatory conduct, Coleman filed this lawsuit. *See id*. Defendant moves to dismiss Coleman's complaint under Rule 12(b)(6) for failure to state a claim. Mot. at 6. Coleman filed a response; Defendant filed a reply; and Coleman subsequently filed a surreply without leave of court. Pl.'s Resp. (Doc. No. 43); Def.'s Reply (Doc. No. 44); Surreply (Doc. No. 45). However, "[u]nder Local Civil Rule 7.1, the movant is generally entitled to file the last pleading. Surreplies are highly disfavored, and this Court will only permit a surreply in exceptional or extraordinary circumstances." *Campoamor v. Cengage Learning, Inc.*, 2010 WL 11618843, at *1 (N.D. Tex. June 10, 2010) (Lynn, J.) (citing *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)). The Court does not find exceptional or extraordinary circumstances in this case to justify permitting additional briefing and,

therefore, does not consider Coleman's surreply and **STRIKES** it. Accordingly, Defendant's motion is ripe for determination.

## II. Legal Standard

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not

4

permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). And though courts must hold "pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, . . . pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam) (citing *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991)). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### III. Preliminary Matter

As a preliminary matter, in his reply, Defendant notes "Coleman's discrimination claims were previously dismissed without prejudice for failure to exhaust her administrative remedies and numerous other claims, including a denial of social security benefits, were dismissed with prejudice after an opportunity to re-plead her claims." Def.'s Reply at 3 n.2 (citing FCR (Doc. No. 33), *Coleman v. Colvin*, 3:16-cv-2608-D-BK (N.D. Tex. Apr. 13, 2017); Order Accepting (Doc. No. 39), *Coleman*, 3:16-cv-2608-D-BK (N.D. Tex. May 30, 2017)).  Defendant further points out that "Coleman does not allege she exhausted her administrative remedies for an alleged failure to hire her as a permanent Contact Representative or other position on the basis of her age, race, gender, or disability. To the extent Coleman's claims are not dismissed, the SSA does not agree she exhausted administrative remedies for such claim." *Id*. at 5 n.7. Coleman's amended complaint does not state that she has now exhausted her administrative remedies. *See* Am. Compl. Rather she contends "the Defendant(s), intentionally ignored [her] many recorded attempts to 'exhaust her administrative remedies.'" *Id*. at 43. To that end, she alleges: ALJ Devika Seth "dismiss[ed] [her] hearing request, returning the complaint to the [SSA]" for a final decision because she "[d]id not show good cause for her failure to cooperate with the Agency's investigation despite the EEO investigator's repeated attempts to obtain relevant information"; the EEOC dismissed her appeal because she filed a civil action in this court; and EEO investigators Atonya McClain and Joshua Foster slandered and defamed her. Am.

Compl. at 2, 9, 44. Thus, even though Coleman's allegations indicate she commenced the administrative process, Defendant does not argue any claim Coleman brings, apart from a claim based on Defendant's alleged failure to hire her as a permanent employee, should be dismissed for failure to exhaust her administrative remedies.

The Supreme Court recently clarified that Title VII of the Civil Rights Act of 1964's (Title VII) exhaustion requirement is a mandatory procedural rule but "not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty. v. Davis*, 139 S.Ct. 1843, 1851 (2019). Similarly, exhaustion under both the Age Discrimination in Employment Act (ADEA) and Rehabilitation Act is nonjurisdictional, though ADEA plaintiffs who choose to pursue their administrative remedies "must completely exhaust [those] remedies before commencing suit in federal court." *White v. Frank*, 718 F. Supp. 592, 595 (W.D. Tex. 1989), *aff'd*, 895 F.2d 243 (5th Cir. 1990) (citations omitted); *accord Smith v. Potter*, 400 F. App'x 806, 810 (5th Cir. 2010) (per curiam) ("Once an employee proceeds down the administrative route [with his ADEA claim], he 'must completely exhaust his administrative remedies before commencing suit in federal court.'"); *see also Smith*, 400 F. App'x at 811 ("[T]he Rehabilitation Act . . . established a private right of action subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII[.]" (quoting *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. Unit A Nov. 1981))); *Holmes v. Thomson Reuters, Inc.*, 2020 WL 215813, at *2 n.3 (N.D. Tex. Jan. 13, 2020) (Lynn, C.J.) ("Because the exhaustion of administrative remedies requirement under

the ADEA is nearly identical to that of Title VII, the Court finds that cases interpreting the requirement in one statute are controlling as to the other." (citing 42 U.S.C. § 2000e-5; 29 U.S.C. § 626; *Coleman v. New Orleans & Baton Rouge S.S. Pilots' Ass'n*, 437 F.3d 471, 479 n.7 (5th Cir. 2006); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 n.2 (5th Cir. 2002))).

While Coleman's Title VII, ADEA, and Rehabilitation Act claims were previously dismissed for failure to exhaust—because the court determined she had commenced the administrative process with respect to her ADEA claims—Coleman's amended complaint does not indicate whether she has now exhausted her administrative remedies. FCR (Doc. No. 33), *Coleman*, 3:16-cv-2608-D-BK (N.D. Tex. Apr. 13, 2017) (dismissing Coleman's ADEA claim for failure to exhaust); Order Accepting (Doc. No. 39), *Coleman*, 3:16-cv-2608-D-BK (N.D. Tex. May 30, 2017) (accepting the FCR's recommendation). However, in her response to Defendant's motion, she states without support or elaboration: "Plaintiff, have [sic] 'exhausted ALL of her administrative remedies' as of this filing. Plaintiffs' [sic] cases apparently wasn't [sic] ready for adjudication, previously." Pl.'s Resp. at 13. Because Defendant does not argue that Coleman's remaining Title VII, ADEA, and Rehabilitation Act claims should be dismissed for failure to exhaust her administrative remedies, and the issue is not jurisdictional, exhaustion is not before the Court. Therefore, the Court does not consider it.

## IV. Analysis

Though Coleman makes most of her allegations under the heading "Negligence," she asserts that Defendant's conduct was intentional. Am. Compl. at 42. Accordingly, the Court liberally construes Coleman's amended complaint to assert discrimination, retaliation, and hostile-work-environment claims under Title VII, discrimination and retaliation claims under the ADEA, and discrimination, failure-to-accommodate, and retaliation claims under the Rehabilitation Act. The Court addresses each of these claims under the relevant statutory authority.

### Title VII

i.

Defendant argues Coleman fails to state a Title VII discrimination claim because "she asserts legal conclusions – devoid of any factual basis to support the conclusion." Mot. at 9. Coleman responds that Defendant's arguments that she failed to allege she was qualified and not hired for a future position, suffered an adverse employment action, and was treated less favorably than other similarly situated employees, are not true. Pl.'s Resp. at 45-58. The Court finds Coleman fails to state a Title VII discrimination claim.

Title VII prohibits the federal government from discriminating against its employees "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). At the motion to dismiss stage, "a plaintiff need not submit evidence to establish the prima facie case for discrimination," but "she must plead sufficient facts on all of

the ultimate elements of the claim to make her case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (per curiam) (citing *Chhim*, 836 F.3d at 470). To state a claim for discrimination under Title VII, a plaintiff must plead that she "(1) is a member of a protected class; (2) was qualified for the position [s]he held; (3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated outside of [her] protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

Here, Coleman, an African American woman, asserts she is a member of a protected class based on her race and sex. Am. Compl. at 43. Coleman does not allege in her amended complaint that she was qualified for the position that she held, that she was subject to an adverse employment action, or that she was treated less favorably than others outside of her protected class who were similarly situated. *See* Am. Compl. In her response, however, Coleman recites credentials from her resume, including the degrees and certifications she holds, and states that she "'did' in fact provide the Defendants with a future job position, for which [she] did qualify." Pl.'s Resp. at 46-47. The Court infers that these same credentials allegedly qualified her for the position that she held during her one-year term. But neither in her amended complaint nor in her response does Coleman sufficiently allege she suffered an adverse employment action.

10

Under Title VII, "[a]dverse employment actions are ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating. [A]n employment action that does not affect job duties, compensation, or benefits is not an adverse action." *Eng. v. Perdue*, 777 F. App'x 94, 99-100 (5th Cir. 2019) (quoting *Stroy v. Gibson*, 896 F.3d 693, 699 (5th Cir. 2018)). Coleman's amended complaint makes clear that she completed her one-year term of employment with the SSA. *See* Am. Compl. at 46 (noting "reason for separation" was because the "position ended"). Thus, she does not argue she was fired from that position; rather, she asserts "Defendant, intentionally discriminated against her when scheduling 'Daily Breaks and Lunches.'" *Id.* at 42. She also argues that Defendant "intentionally set compensation for [her] job . . . below that suggested by the employer's job evaluation study" and "intentionally maintained a neutral compensation policy or practice that had an inverse impact on [her]." *Id.* at 43. But scheduling breaks and lunches, without more, does not constitute an adverse employment action, and Coleman's allegations that her pay was below what an evaluation study recommended it be and that Defendant's "neutral compensation policy" adversely impacted her are conclusory and do not specifically describe an employment action that affected her.

In her response, Coleman states that she "provide[d] the Defendants with the basis of her previously reported adverse employment action, the various adverse employment action(s) based on previously documented and reported protected characteristics in her many filed SSA/EEO Complaints." Pl.'s Resp. at 54. But any

allegation made in a separate case or a filing not before the Court is insufficient to survive a Rule 12(b)(6) motion. Coleman also alleges for the first time in her response that "Mr. Tebow, promised that he would hire [her] for a future full-time 'Claims Assistant' position during [her] interview" but instead hired her as a "Customer Service Representative," that Mr. Tebow hired other temporary employees for permanent positions, and that Mr. Tebow and Ms. Yellowfish "'intentionally and maliciously' prevented" her from applying for a future Claims Specialist position. *Id*. at 48-58. Coleman explains "her medical disability, . . . 3 separate 'No Fault' car wrecks, age, sex and reprisal played a role in Director Tebow's systemic racism and intentional exclusion of the Plaintiff." *Id*. at 53. However, while hiring decisions may be adverse employment actions, Coleman does not plead any facts from which the Court could infer that Mr. Tebow or Ms. Yellowfish's alleged actions are related to her race or sex. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)) ("Title VII prohibits discrimination 'because of' a protected characteristic, including race.").

Even if Coleman made statements in her response indicating she could sufficiently allege that she suffered an adverse employment action, she does not plausibly plead in her amended complaint that she was treated less favorably because of her race or sex than others similarly situated, and the facts in her response are similarly deficient. In fact, Coleman makes no allegation concerning similarly situated employees in her amended complaint other than stating "Plaintiff, is repeatedly and

intentionally being treated differently than others similarly situated because of her [sex,] color, race and national origin (systemic racism)." Am. Compl. at 41. And though Coleman names four individuals in her response as examples of similarly situated employees who were treated more favorably than her because they were hired for permanent positions, those individuals do not demonstrate that "Mr. Tebow, appeared to cater to a particular age and race (younger white and younger Asian) for the same 'Claims Assistant' positions," like Coleman states. Pl.'s Resp. at 53. Coleman describes one individual as an African American woman, another as a Black American man, and the third as a biracial man. The fourth, she states, is a Hispanic man. *Id*. at 57. She also asserts that she "witnessed Mr. Tebow hiring many people of different races, and different sex [sic] for available, 'Claims Assistant' full-time permanent job positions." *Id*. at 53. Thus, Coleman has not set forth any facts in her amended complaint or response to allege that she was treated less favorably than others similarly situated because of her race or sex.

Ordinarily, "when considering a motion to dismiss, the Court . . . only relies on the allegations made in the pleadings, and does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response." *Hearn v. Deutsche Bank Nat'l. Tr. Co.*, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014) (citing *Collins,* 224 F.3d at 498; *Schieroni v. Deutsche Nat'l Bank Trust Co*, 2011 WL 3652194, at *6 (S.D. Tex. Aug. 18, 2011)). However, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions

13

as a motion to amend. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (per curiam) ("It seems that her answer to the motion to dismiss was two days late, but justice requires that we consider the appellant's response as a [motion for] leave to amend her pleading." (citing Fed. R. Civ. P. 15(a); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972))); *accord Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008) (citations omitted). "This is particularly true where . . . the litigant is *pro se* and has not yet made any amendments to her complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010) (per curiam) (citing *Crockett v. Carpenter*, 20 F.3d 1169, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994) (per curiam)). Though Coleman has already amended her complaint, the Court considers the new allegations made in her response as a request for leave to amend. District courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but they have discretion to grant or deny that leave "and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (internal citation and quotation marks omitted) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id*. (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). Here, Coleman's new allegations in her response also fail to state a Title VII

14

discrimination claim; thus, permitting Coleman to amend her complaint to reflect the allegations included in her response would be futile. Accordingly, Coleman's request for leave to amend is **DENIED** and her Title VII discrimination claim is **DISMISSED** without prejudice.

ii.

Defendant contends Coleman fails to state a retaliation claim under Title VII. Mot. at 15. Coleman responds that "it's apparent (to the Plaintiff) that Defendants [sic] counsel have 'NOT' reviewed Plaintiffs' [sic] many filed SSA complaints, SSA/EEO, SSA/CREO, EEO Investigator's records, or EEOC HECAPS file." Pl.'s Resp. at 58-59. The Court finds Coleman fails to state a Title VII retaliation claim.

Title VII's antiretaliation provision prohibits an employer from discriminating against any "employee[] or applicant[] for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also* 42 U.S.C. § 2000e-16 (prohibiting discrimination by federal employers). "To state a claim for retaliation in violation of Title VII, a plaintiff must allege that '(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.'" *Leal v. McHugh,* 731 F.3d 405, 416-17 (5th Cir. 2013) (quoting *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam)).

15

Here, the parties do not dispute that Coleman participated in an activity protected under Title VII by filing a complaint with the EEOC or this lawsuit. *See E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) ("Under Title VII's antiretaliation provision, protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" (quoting 42 U.S.C. § 2000e-3(a))).

Coleman alleges in her amended complaint that Defendant intentionally: "terminated [her] re-employment"; "terminated [her] Social Security Disability Benefits"; "terminated [her] Medicare Part B health insurance"; spread false rumors and terminated Coleman's husband's social security benefits; "made Plaintiff's work more difficult . . . by purposefully changing her mailbox size and responsibilities during her medical absence"; and, through supervisor Daryl Whitten, "filed a false police report (recording, per his falsely filed, DeSoto, Texas Police Report) that he reprimanded the Plaintiff by giving a performance evaluation that is lower than it should be," all "as punishment for Plaintiffs [sic] EEO complaint activity." Am. Compl. at 42-43. Assuming without deciding that Coleman alleged Defendant took an adverse employment action against her, Coleman fails to plead that a causal connection exists between the protected activity and the adverse employment action.

Causation in retaliation cases "is difficult to prove" and "calls for a highly fact specific analysis." *Eng.*, 777 F. App'x at 98 (internal quotation marks omitted) (quoting

*Nowlin v. Resolution Tr. Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)). "Among other factors, [the Fifth Circuit] [has] suggested that an employee's 'past disciplinary record,' an employer's departure from 'typical policy and procedures,' and 'the temporal relationship between the employee's conduct and discharge' might shed light on the causal component of a retaliation claim." *Id.* (quoting *Nowlin*, 33 F.3d at 508). But other than her assertion that Whitten filed a false police report wherein he states he gave her a poor performance evaluation, Coleman does not allege any facts concerning her disciplinary record to suggest Defendant departed from its typical policy and procedure when interacting with her. Nor does she include any facts related to the timing of Defendant's alleged actions to support an inference that the protected activity, her filing a complaint with the EEOC or this lawsuit, precipitated the alleged adverse action. *See id.* at 99 (dismissing plaintiff's Title VII retaliation claim because "[b]y failing to provide temporal detail, [he] left unused an important means of showing causation," and "[h]is complaint also lacked other allegations that might have made up for the deficiency"). Without temporal detail, the Court cannot tell whether these actions occurred after, let alone as a result of, Coleman's filing her complaint. Because Coleman's amended complaint fails to allege a causal connection exists between her protected activity and the adverse employment action, her Title VII retaliation claim is **DISMISSED** without prejudice.

In her response, Coleman notes that her monthly social security disability payments were "'suspended' almost a month before [her] abusive discharge on May

16, 2016," Pl.'s Resp. at 15, but this date does not demonstrate that Defendant's conduct resulted from Coleman's filing of a complaint with the EEOC or this Court. Coleman also lists the dates she filed 19 separate "SSA/EEO complaint[s]" against various SSA employees, but she does not explain how the filing of these complaints relates to an adverse employment action she alleges Defendant took. *Id*. at 60-63. Coleman also includes what she labels as a portion of Whitten's police report from March 4, 2016, wherein Whitten purportedly complains that Coleman's husband assaulted him, speculates Coleman's husband was defending Coleman because Whitten gave her a poor performance review, and mentions that Coleman "recently filed a suite [sic] through [sic] EEOC." *Id*. at 42. While this allegation supports that Whitten filed this police report after Coleman filed a complaint with the EEOC, it describes an alleged assault by Coleman's husband and does not indicate that Whitten retaliated against Coleman for filing a complaint with the EEOC. *See Eng.*, 777 F. App'x at 99 ("[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." (quoting *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997))). Moreover, this new allegation appears in Coleman's response and not her amended complaint. Thus, even if it were sufficient to allege that a causal relationship exists between Coleman's filing of an EEOC complaint and Whitten filing the police report, Coleman's Title VII retaliation claim, as set forth in her amended complaint, would still not survive Defendant's motion. Rather, the Court must construe Coleman's new allegations as a

18

motion for leave to amend. *See Cash*, 978 F.2d at 218; *accord Stover*, 549 F.3d at 989 n.2. In this case, Coleman has already amended her complaint and has filed a previous case arising out of the same nexus of facts. Because Coleman has repeatedly failed to cure the deficiencies in her pleading, the Court finds granting leave to amend would be futile and **DENIES** her motion for leave to amend her retaliation claim. *See Marucci Sports, L.L.C.*, 751 F.3d at 378 (stating district courts may consider "factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment" when determining whether to grant leave to amend).

### iii.

Defendant asserts that Coleman fails to allege a hostile-work-environment claim because she only alleges "generalized and/or isolated incidents" that amount to offensive utterances that "did not impede her ability to succeed or interfere with her work performance." Def.'s Reply at 7-9. Coleman's response does not address a hostile-work-environment claim specifically, but she states she has "already plead[ed] facts to support the essential elements of a discrimination claim under Title VII, the ADEA, the Rehabilitation Act, as well as other applicable and various laws." Pl.'s Resp. at 71. The Court finds Coleman fails to state a Title VII hostile-work-environment claim.

"Title VII does not prohibit all harassment." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

57, 67 (1986)). Rather, "[i]t makes harassing conduct unlawful when it results in the employer 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Id*. (quoting 42 U.S.C. § 2000e-2(a)(1)) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993); *Meritor*, 477 U.S. at 64-67). To state a claim for a hostile work environment under Title VII, a plaintiff must allege "that he [or she] (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his [or her] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Eng.*, 777 F. App'x at 98 (citing *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014)); *see also Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). To violate Title VII, the workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 65, 67). In evaluating whether an environment is hostile or abusive within the meaning of Title VII, "courts look at the totality of the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Harvill v.*

20

*Westward Commc'ns, L.L.C.,* 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris,* 510 U.S. at 23). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.* (quoting *Shepherd v. Comptroller of Pub. Accts.,* 168 F.3d 871, 874 (5th Cir. 1999)).

In her amended complaint, Coleman alleges that on her first day working at the SSA, "'immediately' after parking in the 'unassigned' handicap parking space (in the rear of the building)" supervisor Benavidez "loudly scream[ed], holler[ed] and verbally attack[ed] the Plaintiff with brash questions and repeatedly, scream[ed] 'MOVE YOUR CAR!'" Am. Compl. at 40-41. She also alleges that Defendant changed her mailbox size, discriminatorily scheduled lunches and breaks, scrutinized her work, and invited customers to write negative reviews. *Id.* at 42-43. Specifically, she alleges supervisor Whitten altered her time card and filed a false police report stating that he gave her a poor performance evaluation; supervisors Whitten, Benavidez, and Maldonado "engaged in verbal abuse towards [her]"; and Whitten and "Co-worker Derek Shamberger intentionally practiced harassment (both sexually and non-sexual) towards [her]." *Id.* at 43.

The parties do not dispute that Coleman is a member of a protected class as an African American woman. But Title VII is not a "general civility code" that makes actionable "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 788 (1998) (citations omitted). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Id*. (citations omitted). Here, Coleman's allegations that Defendant changed her mailbox size, discriminatorily scheduled breaks and lunches, scrutinized her work, and invited customers to write negative reviews, together with her assertion that various co-workers yelled at her do not rise above "the ordinary tribulations of the workplace." And her assertion that Whitten filed a police report against her, without more, is too conclusory to discern whether it was objectively offensive conduct. Nonetheless, setting aside whether these actions constitute "unwelcome harassment," Coleman does not plead facts indicating: this allegedly harassing conduct was based on her race or sex; the conduct affected a term, condition, or privilege of her employment—particularly because she completed her employment term; or the SSA knew or should have known of the conduct and failed to take remedial action. Thus, her amended complaint fails to state a Title VII hostile-work-environment claim. Coleman's Title VII hostile-work-environment claim is therefore **DISMISSED** without prejudice.

Coleman adds new allegations in her response, including that co-worker "Sheryl Madison publicly scream[ed] at [her] on the workroom floor (while protesting about Plaintiffs [sic] work assignment for the day) and . . . calling [her] 'ignorant'"; co-worker Derek Shamberger "intentionally sexually harassed [her] by referring to her as his 'work wife,'" "requesting, that she 'bend over the right way,'" and "discussing his shoe size while simultaneously touching his private part." Pl.'s Resp. at 37-38. She also states

Defendant interrupted her computer almost daily, preventing her from "productive job performance." *Id*. at 37. However, isolated insults from co-workers, such as Madison's, and technological difficulties are ordinary workplace tribulations, which are not actionable under Title VII. Moreover, Coleman does not allege Madison's conduct was based on her race or sex. And while offensive, the Court does not find Shamberger's alleged comments, without more, to be "so insensitive and outrageous towards women as to alter the conditions of employment and destroy their equal opportunity in the workplace." *Burson v. Florence Indep. Sch. Dist.*, 2015 WL 5024533, at *3 (W.D. Tex. Aug. 25, 2015) (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995)). Coleman has also not alleged that Shamberger's behavior caused her to be less successful at work. Moreover, Coleman does not plead that Madison's insults and Shamberger's suggestive comments affected a term, condition, or privilege of her employment or that the SSA knew or should have known of the conduct and failed to take remedial action. Accordingly, the Court construes these new allegations as a motion for leave to amend her Title VII hostile-work-environment claim and **DENIES** it because permitting Coleman to amend her complaint to reflect these allegations would be futile since they would not survive a Rule 12(b)(6) motion to dismiss.

<u>ADEA</u>

i.

Defendant argues Coleman fails to state an ADEA discrimination claim because she only asserts legal conclusions. Mot. at 9. Coleman responds that Defendant's

23

dismissal arguments are untrue. Pl.'s Resp. at 45-58. The Court finds Coleman fails to state an ADEA discrimination claim.

To state a claim for discrimination based on age, plaintiffs must allege: "1) they are within the protected class; 2) they are qualified for the position; 3) they suffered an adverse employment decision; and 4) they were replaced by someone younger or treated less favorably than similarly situated younger employees (*i.e.,* suffered from disparate treatment because of membership in the protected class)." *Leal*, 731 F.3d at 410-11 (internal quotation marks omitted) (quoting *Smith v. City of Jackson,* 351 F.3d 183, 196 (5th Cir. 2003)). Under the ADEA, "the protected class includes individuals who are at least forty years old." *Id*. (citing 29 U.S.C. §§ 631(a), 633a(a)). "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313 (1996) (Scalia, J.).

Here, Coleman generally asserts that she is "intentionally and maliciously being treated differently than others similarly situated because of her age." Am. Compl. at 41. Specifically, the only allegation she directly makes with respect to age is that Defendant intentionally discriminated against her when scheduling daily breaks and lunches because of her age, among other things. *Id*. at 42. Nowhere in her amended complaint, however, does Coleman state her age. *See id*. Therefore, she has not alleged

24

that she is a member of the protected class, and for this reason alone, she fails to state an ADEA discrimination claim.

Even so, Coleman has also not alleged that she suffered an adverse employment decision. Like under Title VII, adverse employment actions under the ADEA are "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Eng.*, 777 F. App'x at 99-100 (quoting *Stroy*, 896 F.3d at 699). As stated, Coleman's amended complaint makes clear that she completed her one-year term of employment with the SSA. *See* Am. Compl. at 46 (noting "reason for separation" was because the "position ended"). Therefore, she was not fired from that position, and the scheduling of daily breaks and lunches, without more, does not constitute an adverse employment action. And most importantly, she does not "plausibly address" the ultimate question of whether Defendant took this action because of her age. *See Eng.*, 777 F. App'x at 99 (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *Leal*, 731 F.3d at 410-12). Also, in her response, Coleman does not include her age or any new allegations explaining how Defendant's actions were based on her age. For these reasons, Coleman fails to state an ADEA discrimination claim, and it is **DISMISSED** without prejudice.

ii.

Defendant also argues Coleman fails to state an ADEA retaliation claim because she "pleads no facts to support the second and third elements of a retaliation claim." Mot. at 16. Coleman responds that she "did in fact state a claim for the many

25

intentionally practiced acts of retaliation under . . . the ADEA." Pl.'s Resp. at 58. The Court finds Coleman fails to state an ADEA retaliation claim.

"A retaliation claim under the ADEA entails the same showing" as required under Title VII. *Eng.*, 777 F. App'x at 98 (citing *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496-97 (5th Cir. 2015)). Thus, to state a retaliation claim under the ADEA, a plaintiff must allege that "(1) he engaged in conduct protected by [the ADEA]; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Id*. (citing *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)). Coleman's allegations in support of her Title VII and ADEA claims are the same. Therefore, Coleman's amended complaint also fails to allege a causal connection exists between Coleman's protected activity and the adverse employment action, as explained above. Accordingly, her ADEA retaliation claim is **DISMISSED** without prejudice.

## Rehabilitation Act

i.

Defendant asserts Coleman fails to state disability-discrimination and failure-to-accommodate claims under the Rehabilitation Act. Mot. at 18. Coleman responds that "[i]t is [her] position, that her medical disability, . . . 3 separate 'No Fault' car wrecks, age, sex and reprisal played a role in [Defendant's] systemic racism and intentional exclusion of [her]." Pl.'s Resp. at 53. Coleman fails to state disability-discrimination and failure-to-accommodate claims under the Rehabilitation Act.

26

The Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (per curiam) (citing *Jones v. Potter,* 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination.")). But § 794(d) of the Rehabilitation Act states "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . ." 29 U.S.C. § 794(d). The ADA provides that no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As stated, "at this juncture, a plaintiff need not submit evidence to establish the prima facie case for discrimination," but "she must plead sufficient facts on all of the ultimate elements of the claim to make her case plausible." *See Davis*, 761 F. App'x at 454 (affirming dismissal of Title VII discrimination claim for failure to allege specific facts); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 600 (W.D. Pa. 2002) ("An employment discrimination suit falls under Title I of the ADA, not Title II, so the remedies available for such employment discrimination are Title VII remedies[.]" (citing 42 U.S.C. §§ 12117(a), 12133)). Thus, "a prima facie discrimination claim under the ADA," requires a plaintiff

to allege: "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). Discrimination under the ADA also "includes failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). Therefore, to state a failure-to-accommodate claim under the ADA, a plaintiff must allege: (1) he or she is a "qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitation." *Id*. (internal quotation marks and citations omitted); *accord Stokes v. Nielsen*, 751 F. App'x 451, 454 (5th Cir. 2018) (per curiam).

Here, Coleman alleges she "[was] intentionally and repeatedly treated differently than others similarly situated because of her disability." Am. Compl. at 41. She again states that Defendant discriminated against her when scheduling daily breaks and lunches because of her disability; that she was paid less than employees "with and without disabilities"; that Defendant's "neutral compensation policy" had an adverse impact on her as part of a "protected class; a woman; disabled"; and that she "repeatedly requested reasonable accommodations," which Defendant "refused and

28

denied." *Id*. at 42-43. However, both Coleman's discrimination and failure-to-accommodate claims under the Rehabilitation Act require her to allege that she has a disability. Apart from making conclusory statements that Defendant discriminated against her and that she is a disabled individual, she does not plead facts to support that she is disabled. For example, she does not explain the nature of her disability or describe the accommodations she required. *See* Am. Compl. Moreover, with respect to Coleman's Rehabilitation Act discrimination claim, she does not adequately allege she suffered an adverse employment action as explained above in connection with her Title VII and ADEA discrimination claims. Coleman's response states Defendant "repeated[ly]and intentional[ly] refused to provide Plaintiff with requested, functional and needed job accommodations" and purports to include the text of a letter to Defendant stating Coleman "is an individual with a documented disability," but it does not include any new allegations explaining the nature of her disability or the accommodations she required. Pl.'s Resp. at 7, 37, 64. For these reasons, Coleman's Rehabilitation Act discrimination and failure-to-accommodate claims are **DISMISSED** without prejudice.

ii.

Like her Title VII and ADEA retaliation claims, Defendant argues Coleman also fails to state a claim for retaliation under the Rehabilitation Act. Mot. at 15. Coleman again responds that she "did in fact state a claim for the many intentionally practiced

acts of retaliation under . . . the Rehabilitation Act." Pl.'s Resp. at 58. The Court finds Coleman fails to state a claim for retaliation under the Rehabilitation Act.

To state a retaliation claim under the Rehabilitation Act, a plaintiff must allege facts demonstrating "that: (1) he engaged in a protected activity (e.g., the filing of an EEO complaint); (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the adverse employment action and the protected activity." *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004) (per curiam) (citations omitted). These elements are identical to those required to state Title VII and ADEA retaliation claims, and Coleman's amended complaint does not include different, separate allegations to support her Rehabilitation Act retaliation claim from those intended to support her Title VII and ADEA retaliation claims. *See Ogden v. Brennan*, 657 F. App'x 232, 235 (5th Cir. 2016) (per curiam) (citing *McCoy*, 492 F.3d at 556-57) (setting forth elements for retaliation claim under the ADEA); *Calderon*, 113 F. App'x at 592 n.1 (applying the same standards for analyzing retaliation claims under the ADA and Title VII to plaintiff's retaliation claim under the Rehabilitation Act). Therefore, Coleman's amended complaint fails to allege a causal connection exists between Coleman's protected activity and the adverse employment action, as explained above. Accordingly, her Rehabilitation Act retaliation claim is **DISMISSED** without prejudice.

**V. Conclusion**

The Court **GRANTS** Defendant's Motion to Dismiss (Doc. No. 37) and **DISMISSES** Coleman's claims against Defendant without prejudice. Additionally, the Court construes Coleman's new allegations in her response to Defendant's motion as a request for leave to amend and **DENIES** it for the foregoing reasons.

**SO ORDERED.**

Signed on March 24, 2021.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

31